```
                    IN THE UNITED STATES DISTRICT COURT

                       FOR THE DISTRICT OF DELAWARE


     FINJAN, INC.,                    )
                                      )
              Plaintiffs,             )
                                      ) C.A. No. 18-1519(MN)
     v.                               )
                                      )
     RAPID7, INC., et al.,            )
                                      )
              Defendants.             )


                            Friday, December 13, 2019
                            12:30 a.m.
                            Teleconference


                            844 King Street
                            Wilmington, Delaware



     BEFORE:   THE HONORABLE MARYELLEN NOREIKA
               United States District Court Judge




     APPEARANCES:


                   POTTER ANDERSON & CORROON, LLP
                   BY:  PHILIP A. ROVNER, ESQ.

                   -and-

                   KRAMER LEVIN NAFTALIS & FRANKEL, LLP
                   BY:  AARON M. FRANKEL, ESQ.

                                Counsel for the Plaintiffs
```

1   APPEARANCES CONTINUED:

2

3

                DUANE MORRIS
4               BY:  RICHARD L. RENCK, ESQ.
                BY:  DAVID C. DOTSON
5

6                    Counsel for the Defendants

7

8

9

10                          - oOo -

11                  P R O C E E D I N G S

12              (REPORTER'S NOTE:  The following telephone

13  conference was held in chambers, beginning at 12:30 p.m.)

14

15

16

12:30:24  17            THE COURT:  Good afternoon, counsel.  Who is

12:30:31  18  here, please?

12:30:32  19            MR. ROVNER:  Good afternoon, Your Honor.  It's

12:30:33  20  Phil Rovner from Potter, Anderson & Corroon.  And with me on

12:30:36  21  the line is Aaron Frankel.

12:30:41  22            THE COURT:  Welcome.

12:30:41  23            For defendants.

12:30:42  24            MR. RENCK:  Good afternoon, Your Honor.  It's

12:30:43  25  Richard Renck from Duane Morris.  I have on the line with me

```
12:30:47  1    our partner from our Atlanta office, David Dotson.
12:30:51  2                THE COURT:  Welcome to you as well.
12:30:53  3                So I have reviewed the letters back and forth on
12:30:59  4    the discovery issues.  It appears that defendants have
12:31:05  5    agreed to supplement the information requested by plaintiffs
12:31:13  6    with everything by the 20th except for with respect to
12:31:21  7    Interrogatory Number 5 which would be supplemented by the
12:31:25  8    10th.
12:31:25  9                Does that address the issues that plaintiff has?
12:31:30 10                MR. FRANKEL:  Yes, Your Honor.  This is Aaron
12:31:33 11    Frankel on behalf of Finjan.  We have confirmed with
12:31:37 12    defendants that these issues have all been resolved.  We're
12:31:40 13    okay with the supplementation of that one interrogatory on
12:31:44 14    the 10th.  And that's just subject to Rapid7 confirming on
12:31:48 15    the record that they will supplement as indicated in the
12:31:52 16    letter.
12:31:53 17                THE COURT:  Okay.
12:31:54 18                MR. DOTSON:  This is David Dotson with Duane
12:31:57 19    Morris with Rapid7.  And we agree.
12:31:59 20                THE COURT:  Okay.  So thank you for resolving
12:32:02 21    that one yourselves.  I appreciate that.  And I think that
12:32:07 22    just leaves us now with the supplementation of plaintiff's
12:32:14 23    contentions regarding infringement; is that right?
12:32:20 24                MR. FRANKEL:  That's right, Your Honor.
12:32:21 25                MR. DOTSON:  That's correct.
```

```
12:32:23  1              THE COURT:  So I have read everything, but I
12:32:28  2   will hear if defendants want to add anything, and then I
12:32:33  3   will give Finjan a chance to respond.  Is that correct?
12:32:40  4              MR. DOTSON:  Certainly, Your Honor.  This is
12:32:42  5   David Dotson with Duane Morris.  I'm happy to walk through
12:32:46  6   the chart if that's helpful for the Court.  That may be a
12:32:49  7   little drawn out.  I know the Court is busy.  I'll start by
12:32:52  8   noting that the overall issue that we're having here is this
12:32:56  9   is obviously an expansive case.  We have seven asserted
12:33:00 10   patents, we have over forty asserted claims and we have now
12:33:04 11   over -- well, not over, we have a 122 claims chart alleging
12:33:10 12   infringement about various products in combination with
12:33:14 13   third-party products.  And initial infringement contentions
12:33:17 14   were due back in May and that's supposed to help us manage
12:33:22 15   these type of complicated cases including to help streamline
12:33:26 16   discovery and reduce burden and expense, but here we are in
12:33:30 17   December and we're still not where we need to be,
12:33:33 18   particularly given the fact that Finjan requested source
12:33:36 19   code production very early in the case and Your Honor agreed
12:33:41 20   to that request, and with the kind of notation that Finjan
12:33:47 21   better provide appropriate contentions that make use of that
12:33:51 22   code.
12:33:52 23              And here we are again after Finjan has reviewed
12:33:56 24   this code multiple times with its experts supplementing its
12:34:00 25   contentions in September, having had actions to this code
```

```
12:34:04   1    and reviewed it multiple times over five or six months and
12:34:08   2    we still don't have indication of how each element is met by
12:34:13   3    each asserted product.  If that's the case, if we don't have
12:34:16   4    an element that's met, then perhaps that claim doesn't need
12:34:19   5    to be asserted or that product doesn't need to be in the
12:34:22   6    case.  That's kind of the point of this process.  But it
12:34:26   7    seems that Finjan is intent on maintaining every accused
12:34:31   8    product against every asserted claim in the case.
12:34:34   9                And kind of to address a few of the things in
12:34:38  10    Finjan's response, they said that we've only alleged
12:34:45  11    officially nineteen of the 122 charts.  That's not accurate.
12:34:49  12    Obviously it's a three-page brief.  We can't address all 122
12:34:54  13    charts in a three-page brief, so we provided examples.  And
12:34:59  14    I don't think the Court would appreciate 122 charts being
12:35:02  15    submitted as exhibits.  But to the extent that the Court
12:35:09  16    agrees with any of the areas that requires supplementation,
12:35:12  17    I'm sure that Finjan can address the issues across the chart
12:35:17  18    as necessary.
12:35:18  19                But in any event, we have explicitly referenced,
12:35:21  20    I believe the number is ninety-five charts in our letter.
12:35:24  21    We talk about, for example, the InsightVM charts having a
12:35:29  22    given deficiency, there are five charts that relate to
12:35:32  23    InsightVM, so it's not just one chart.  These are expansive
12:35:38  24    issues that are problematic as we try and deal with this
12:35:42  25    case and we get into 30(b)(6) witness deposition preparation
```

| | |
|---|---|
| 12:35:47 1 | where we have got to educate our engineers on the right |
| 12:35:50 2 | aspects of the products.  And if we don't know what those |
| 12:35:53 3 | aspects are, then it's hard to officially prepare our |
| 12:35:57 4 | witnesses or run the risk of having Finjan say that your |
| 12:36:01 5 | witnesses aren't prepared properly.  We need to know what |
| 12:36:03 6 | they're shooting at and we need to be able to deal with that |
| 12:36:08 7 | from a discovery perspective and just in terms of evaluating |
| 12:36:13 8 | our case. |
| 12:36:13 9 | And so I'm happy to turn and point out some of |
| 12:36:18 10 | the things in the charts if Your Honor would like.  I know |
| 12:36:21 11 | one of the things that I would like to reference is Finjan |
| 12:36:24 12 | said that they cited all these pages of source code, but if |
| 12:36:27 13 | you look at the specific deficiencies that are identified |
| 12:36:31 14 | within Rapid7's letter, there are only I think two elements |
| 12:36:35 15 | in two of the charts where source code has been cited for |
| 12:36:39 16 | any of those specific elements.  So what Finjan does is |
| 12:36:43 17 | point to source code that it cited for separate elements |
| 12:36:47 18 | within the same claim, but obviously source code for a |
| 12:36:51 19 | separate element within the same claim is dealing with |
| 12:36:53 20 | different limitations.  And if you look at the explanations |
| 12:36:59 21 | that Finjan provides for those separate cross-reference |
| 12:37:03 22 | elements, it doesn't deal with the element that's at issue |
| 12:37:06 23 | in Rapid7's letter. |
| 12:37:08 24 | So again, we're dealing with a situation that |
| 12:37:12 25 | they have the code and they have cited it for a number of |

12:37:15 1  elements and not generally the elements that we pointed to
12:37:19 2  in our letter.
12:37:20 3  THE COURT: Look, I got to tell you, it's really
12:37:22 4  hard for me coming in with these letters to be able to
12:37:27 5  understand what your problem is. So I'm going to give you
12:37:32 6  one element here, and let you walk me through what the issue
12:37:38 7  is because I'm not sure that based on what I have in front
12:37:42 8  of me I can tell. So let's try Appendix G, it's the '918
12:37:52 9  patent, InsightVM, because I think you just mentioned that,
12:37:57 10 and your issue is satisfying Elements 1D and 1E. Why don't
12:38:06 11 you explain for me why what they have for 1D is
12:38:10 12 insufficient.
12:38:13 13 MR. DOTSON: Certainly, Your Honor. If I'm
12:38:16 14 right about that, that's Exhibit 10 to Rapid7's letter which
12:38:19 15 is Appendix G1 of the '918 patent.
12:38:24 16 THE COURT: And I'm looking at page 16 which is
12:38:27 17 where 1D starts, and that's where they have the element.
12:38:31 18 MR. DOTSON: Perfect. So, for element, 1D, we
12:38:35 19 can see it requires determining based on a derived profile
12:38:39 20 of some code an appropriate computer account from among a
12:38:44 21 broad number of computer accounts under which this code can
12:38:47 22 be professed by a client computer. That's a pretty specific
12:38:52 23 requirement.
12:38:52 24 THE COURT: I actually thought it seemed pretty
12:38:55 25 generic, but okay. Go ahead.

12:38:57  1                MR. DOTSON:  We got to have this device, this
12:39:00  2   InsightVM, a product that they have accused of infringement
12:39:05  3   has to figure out a computer account on a client device
12:39:09  4   that's going to be able to process content.  And if I look
12:39:12  5   at the explanation here on page 16, all we have is what is
12:39:18  6   in essence a regurgitation of the claim language, InsightVM,
12:39:23  7   that can access more than one account.  There is no
12:39:28  8   explanation as to how that is the case or what inside
12:39:32  9   InsightVM is doing that.  There is one document here, and
12:39:35 10   that document has nothing to do with determining an
12:39:38 11   appropriate computer account on a client device in which to
12:39:42 12   execute code.
12:39:43 13                So there is just no disclosure as to how they
12:39:50 14   think we're doing this with the InsightVM product.
12:39:53 15                THE COURT:  Let me hear from Finjan on this
12:39:56 16   particular example.  Can you tell me why the concerns that
12:40:00 17   were just raised aren't valid?
12:40:03 18                MR. FRANKEL:  Well, Your Honor, what's shown
12:40:06 19   here is setting policies for different accounts.  Policies
12:40:10 20   are definitions of what a user is allowed to do.  The rest
12:40:16 21   -- so, portions of this claim is talking about determining
12:40:21 22   which user accounts are allowed to use code A and that's
12:40:26 23   done through the policy setting function that's disclosed
12:40:29 24   here.  The rest of the claim element is referring to
12:40:33 25   deriving the profile for code A, and that functionality is

12:40:38 1 disclosed in considerable detail in connection with element
12:40:43 2 1C which precedes 1E.  In addition to the doctrine of
12:40:48 3 equivalents, there is specific source code that's providing
12:40:52 4 this exact functionality that we located at the charts,
12:40:57 5 there is several pages of source code as well as
12:41:00 6 documentation describing functionality.
12:41:03 7           To just look at the page discussing 1D in
12:41:07 8 isolation ignores all the information that's provided about
12:41:10 9 code A and deriving the profile of code A with respect to
12:41:15 10 the previous element and that's what the policies apply to.
12:41:19 11           Frankly I think this is a very helpful example
12:41:22 12 for us of specific functionality within the product and
12:41:26 13 specific source codes that's been identified.  They may
12:41:31 14 disagree that that's outside the claim element, but it is
12:41:35 15 the functionality and representative source code.
12:41:39 16           MR. DOTSON:  And Your Honor, if I may, this is
12:41:41 17 David Dotson again.  This is exactly the issue that I was
12:41:45 18 referring to earlier, he's talking about element 1C, a
12:41:48 19 source code with element 1C.  That source code purportedly
12:41:53 20 relates to scanning code to derive a profile.  We haven't
12:41:57 21 raised an issue with that.  We raised an issue of the
12:42:00 22 requirement for determining which is a separate requirement
12:42:03 23 determining appropriate computer account on a client device
12:42:07 24 that can execute the code based on that profile.  We're not
12:42:11 25 disputing whether there has been a disclosure of some

```
12:42:14  1    purported scanning to derive a profile, it's this next
12:42:18  2    element that's not disclosed.  And frankly it's telling that
12:42:24  3    we can cite code for 1C, but we can't cite code for 1D.
12:42:29  4                MR. FRANKEL:  Your Honor, should I further
12:42:31  5    address?
12:42:32  6                THE COURT:  I mean, it does say as shown below
12:42:35  7    based on the security profiles determined above, which I get
12:42:40  8    you referred to 1C, then you say as shown below it
12:42:44  9    determines, so you seem to be saying that what follows is
12:42:47 10    what shows that that step is met.  So you want to follow-up
12:42:51 11    a little bit?
12:42:52 12                MR. FRANKEL:  Correct.  A policy in the context
12:42:55 13    of computer security is a defined set of permissions that
12:43:03 14    are assigned to a particular user account.  That's something
12:43:05 15    that would be understood to a person of skill in the art and
12:43:08 16    I'm sure that that's counsel's understanding of policy as
12:43:12 17    well.  So when a policy is assigned to an account, again,
12:43:16 18    that's the functionality we're referring to here with this
12:43:19 19    document, this assigning permissions to computer accounts.
12:43:23 20                So when we say based on the security profiles
12:43:28 21    determined in 1C referring to what's above, there are policy
12:43:32 22    definitions which say what functions particular accounts are
12:43:37 23    allowed to access and we point to the proof of that.  We
12:43:43 24    could recopy the source code from the previous element here,
12:43:47 25    that would just further bulk up the chart, but without
```

```
12:43:51  1    adding any additional information.
12:43:55  2            MR. DOTSON:  Your Honor, if I might just address
12:43:59  3    a couple of points that Mr. Frankel raised.
12:44:02  4            THE COURT:  Sure.
12:44:03  5            MR. DOTSON:  This document, assuming that a
12:44:06  6    policy is what Mr. Frankel says it is, and I'm not sure
12:44:10  7    that's even the case, where does this document tell me how
12:44:14  8    that policy, A, ties to any computer account on a client
12:44:18  9    device that can execute the code, or B, the product is
12:44:22 10    determining a computer account to use on the client device
12:44:28 11    based on this document?  It's just not there.  And again,
12:44:33 12    citing code for scanning to derive a profile would not be
12:44:40 13    helpful, so cutting and pasting that here would obviously
12:44:44 14    not resolve the issue.
12:44:45 15            MR. FRANKEL:  This is not an expert report
12:44:48 16    offered in opposition to a motion for summary judgment.
12:44:51 17    This is -- and this was provided several months ago.  This
12:44:55 18    is disclosing to Rapid7 where we think the functionality is
12:45:01 19    located in the product that satisfies this limitation.  We
12:45:06 20    have identified how the security -- how the code profiles
12:45:10 21    are derived and we have identified the functionality where
12:45:15 22    policies are assigned which give different accounts
12:45:19 23    different permissions and we're saying that's how this claim
12:45:22 24    element is satisfied.  They may not agree with us that we
12:45:25 25    have accurately described the functionality or that it
```

 1  actually fills the claim element, but that's our contention

 2  in the case.

 3          THE COURT:  All right.  This is what I'm going

 4  to do.  It's up to Finjan, you can by January 10th

 5  supplement again to address some of these concerns.  It's up

 6  to you.  But if you don't, you're not going to be able to

 7  raise new issues.  Like when you said this is not an expert

 8  report, you're not going to suddenly be able to get into a

 9  lot more detail in actually fleshing out your contentions in

10  an expert report if you haven't fairly disclosed them here.

11  If you think this is sufficient to give notice of what your

12  contentions are, I'm not going to make you supplement

13  because I'm not sure I understand exactly what you need, but

14  if you don't supplement and get more specific with what

15  you're claiming, what aspects of this meet the claim

16  elements, you're not going to be able to do for the first

17  time and surprise them in the expert reports.  I'm not

18  saying that's what you're intending to do, it just caught my

19  attention when you said this is not an expert report.  The

20  expert reports may want to flesh out a little bit more, but

21  they shouldn't for the first time be giving what specific

22  aspects of this policy thing meet the element.

23          MR. FRANKEL:  Your Honor, may I make a

24  suggestion along those lines?

25          THE COURT:  I don't know who is speaking, so I

12:47:05  1    don't know.

12:47:05  2                MR. FRANKEL:  Your Honor, it's Aaron Frankel on

12:47:08  3    behalf of Finjan.  We just started to take the 30(b)(6)

12:47:13  4    depositions and what we have agreed with Rapid7 is that

12:47:16  5    we're taking a 30(b)(6) deposition on each of the products.

12:47:20  6    There are really seven products at issue here.  There is a

12:47:23  7    lot of charts because the products interact.  And in

12:47:28  8    Rapid7's request we have provided a separate chart for each

12:47:31  9    interaction combination of products as to each patent which

12:47:34 10    is really pulling up the number charts.  There is really

12:47:39 11    seven primary charts at issue.  As we take each of these

12:47:43 12    depositions, we're really getting a lot of information.  We

12:47:47 13    did our first one just yesterday.  The witness is very well

12:47:50 14    prepared.  There were about four pages of source code in

12:47:53 15    total that we printed for that product.  The witness was

12:47:56 16    well prepared to discuss the source code.  We learned a lot.

12:48:00 17                What I would suggest is after we take those

12:48:03 18    30(b)(6) depositions, we can provide a much more meaningful

12:48:08 19    and complete supplementation to guide the conclusion of fact

12:48:14 20    discovery.  We would be much more focused on our part that

12:48:18 21    would be a good opportunity to narrow parts of the case,

12:48:20 22    certainly to the product for which we just took the

12:48:23 23    deposition --

12:48:24 24                THE COURT:  When is that going to be?

12:48:27 25                MR. FRANKEL:  We have most of those depositions

12:48:31  1    scheduled to be concluded in January and February.  And we
12:48:34  2    just talked with Rapid7 about extending the close of fact
12:48:39  3    discovery to accommodate some other depositions.  So this
12:48:42  4    would be in advance of close of fact discovery.
12:48:45  5                 THE COURT:  It just doesn't seem to me that you
12:48:49  6    should get to the end of fact discovery to give over
12:48:51  7    contentions, that they should have to wait until the end of
12:48:54  8    fact discovery for them to fully understand your
12:48:58  9    contentions.  But let me hear from Rapid7 on this.
12:49:03 10                 MR. DOTSON:  David Dotson, Your Honor.  That was
12:49:05 11    exactly what I was going to say.  Again, these were due in
12:49:09 12    May.  And here we are getting close to the end of fact
12:49:14 13    discovery and we still don't know where they're going with
12:49:17 14    this.  If they're telling us on the one hand their
12:49:20 15    contentions are good enough, there shouldn't be much work to
12:49:23 16    do.  But we don't get to have a redo on the schedule where
12:49:27 17    they get a procedure whereby they can have free reign to
12:49:32 18    amend their contentions as they go when they're supposed to
12:49:36 19    have this stuff back in May.  That's the whole point of the
12:49:39 20    process to be able to tailor the case as it's designed to be
12:49:42 21    tailored in view of the scope of the case early on so we can
12:49:45 22    deal with discovery and strategy accordingly.
12:49:48 23                 MR. FRANKEL:  Your Honor, Aaron Frankel.
12:49:50 24                 Just to be clear, the contentions in the
12:49:52 25    schedule provided at the beginning of discovery and they're

| | |
|---|---|
| 12:49:56 1 | supposed to give fair notice of the theories in the case and |
| 12:50:01 2 | the functions that they are accusing, and we have done just |
| 12:50:05 3 | that.  The issue here is that as we've had about ten days of |
| 12:50:09 4 | source code review, but that's across seven products, and |
| 12:50:13 5 | we're just getting into the depositions.  We are continuing |
| 12:50:16 6 | to learn.  That's the purpose of discovery.  My |
| 12:50:19 7 | understanding of the Delaware practice is that the |
| 12:50:22 8 | infringement contentions can be amended as additional |
| 12:50:26 9 | discovery is uncovered.  So what I was proposing is that it |
| 12:50:31 10 | makes sense to do that -- again, I'm not suggesting that we |
| 12:50:35 11 | wait until the end of discovery.  If we take a few more of |
| 12:50:38 12 | these 30(b)(6) depositions, we're going to have much more |
| 12:50:43 13 | information and we can put them in much better shape. |
| 12:50:47 14 | Alternatively -- |
| 12:50:48 15 | THE COURT:  All right.  I'm not going to give |
| 12:50:50 16 | you until February.  So when can you do this?  I don't know |
| 12:50:53 17 | when the depositions are scheduled.  You are the ones who |
| 12:50:56 18 | are scheduling them.  You don't get until February.  So when |
| 12:50:59 19 | can you supplement and give a meaningful supplementation? |
| 12:51:04 20 | MR. FRANKEL:  May we have until January 24th, |
| 12:51:06 21 | Your Honor? |
| 12:51:07 22 | THE COURT:  Will you give the other side until |
| 12:51:09 23 | January 24th for their contentions to supplement as well? |
| 12:51:13 24 | MR. FRANKEL:  To the extent it would be helpful |
| 12:51:15 25 | for them.  Although it would be -- yes, Your Honor. |

```
12:51:20  1              THE COURT:  All right.  Everyone can have until
12:51:24  2     January 24th to supplement.  I expect those supplementations
12:51:28  3     to be fulsome and based on everything that you can
12:51:31  4     supplement with until then.  And then only if you show good
12:51:38  5     cause after that for learning something new can you
12:51:40  6     supplement again.
12:51:42  7              Any other questions?
12:51:46  8              MR. FRANKEL:  No, Your Honor.  Thank you.
12:51:49  9              MR. DOTSON:  No, Your Honor, thank you.
12:51:50 10              THE COURT:  All right.  Thanks.  Have a good
12:51:52 11     weekend.
12:51:53 12              MR. DOTSON:  Thank you, Your Honor.
12:51:54 13              MR. FRANKEL:  Thank you.
         14              (Teleconference concluded at 12:51 p.m.)
         15
         16              I hereby certify the foregoing is a true
                and accurate transcript from my stenographic notes in the
         17     proceeding.
         18
                                              /s/ Dale C. Hawkins
         19                                  Official Court Reporter
                                                U.S. District Court
         20
         21
         22
         23
         24
         25
```