# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 18-1519-MN |
| ) | |
| RAPID7, INC., a Delaware Corporation and ) | **PUBLIC VERSION** |
| RAPID7 LLC, a Delaware Limited Liability ) | |
| Company, ) | |
| ) | |
| Defendants. ) | |

## LETTER TO THE HONORABLE MARYELLEN NOREIKA
## FROM PHILIP A. ROVNER

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1700

Aaron M. Frankel
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Dated: May 12, 2020
Public version dated: May 19, 2020

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff*
*Finjan, Inc.*



**Philip A. Rovner**
Partner
provner@potteranderson.com
302 984-6140 Direct Phone
302 658-1192 Firm Fax

May 12, 2020

<u>VIA CM/ECF</u>
The Honorable Maryellen Noreika
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

**PUBLIC VERSION**
May 19, 2020

Re: <u>*Finjan, Inc. v. Rapid7, Inc.,* D. Del. C.A. No. 18-1519-MN</u>

Dear Judge Noreika:

As a threshold matter, we write to raise two important points that Rapid7 omitted. First, counsel for the parties to this action already briefed and argued this same issue to Magistrate Judge DeMarchi in *Finjan, Inc. v. SonicWall*, 5:17-cv-04467-BLF-VKD (N.D. Cal.), who is in the process of reviewing the Disputed Documents *in camera* and is expected to issue an order shortly. Second, the parties narrowed the dispute, agreeing in *SonicWall* that the Court only need determine if eight documents from 2005 to 2008 were properly redacted or withheld. The remaining documents on the privilege log Rapid7 submitted to the Court (D.I. 135-1, Ex. A) are either duplicate documents or 2019 deposition transcripts with the redactions limited to the portions discussing the eight disputed documents. Finjan attaches as Exhibit 1 the updated privilege log submitted in *SonicWall* with the remaining eight disputed documents noted. Upon the Court's request, Finjan will provide the Disputed Documents for *in camera* review.

Finjan properly withheld or redacted the Disputed Documents in this case because they are privileged and contain attorney work product. These documents are materials from Finjan's Board of Directors (from 12 to 15 years ago) containing the legal advice of counsel regarding patent litigation and enforcement matters, a dispositive fact that Rapid7 does not dispute. Ex. 1.

There was no waiver of work product immunity or privilege when Finjan shared these documents with Mr. Samet, who attended Finjan's Board meetings as an observer for Cisco. Finjan only shared these documents with Cisco under the parties' specific, confidential, common-interest relationship where Cisco, which became a major Finjan investor in 2004, obtained an observer position on Finjan's Board. D.I. 135-2, Ex. B, Samet Tr. at 60:19-61:6. At the time Finjan shared the materials, Finjan and Cisco were not adversaries and worked collaboratively to further their common interests to obtain favorable business and legal outcomes. Cisco did not divest its significant stake in Finjan until 2017, after Finjan filed suit against Cisco. Ex. 2, SEC filing.

In the Investor Rights Agreement ("IRA") between Finjan and Cisco, which provided Cisco the right to send an observer, Cisco agreed that ███████████████████████████ ███████████████████████████ D.I. 135-5, Ex. E (IRA), § 2.7 (emphasis added). Rapid7 offers no

evidence that Cisco or its observer ever failed to comply with that contractual obligation. To the contrary, Finjan's Board member Daniel Chinn testified that Finjan and Cisco entered into nondisclosure agreements "at various stages." Ex. 3, Chinn Tr. at 242:11-16. And Rapid7 acknowledges that Cisco and Finjan entered into NDAs before and after the time of the disclosure. D.I. 135-6, Ex. F; D.I. 135-8, Ex. H. Cisco's obligation to keep confidential the Disputed Documents continues to this day. Thus, there is no waiver and Rapid7 is not entitled to these privileged and work-product materials.[1]

The Court should further deny Rapid7's request because the Disputed Documents are irrelevant to this action. Cisco produced the Disputed Documents in its case because they related to its intimate knowledge of Finjan's patents and its litigation activities and, thus served as evidence in that case of, among other things, Cisco's willful infringement of Finjan's patents. The same relevance rationale does not apply here. Rapid7 concedes it has no specific basis to conclude that these 12-year old documents are relevant to the issues in this case. Relevance is never a "non-sequitur" in a motion to compel, as Rapid7 contends. It is the *sine qua non*. Indeed, the Disputed Documents do not reference Rapid7.

### A. The Disputed Documents are Attorney Work Product

The Disputed Documents include advice prepared by Finjan's outside counsel in anticipation of litigation and are therefore immune from discovery as attorney work product. D.I. 135-1, Ex. A at 2-8; *WebXchange Inc. v. Dell Inc.*, 264 F.R.D. 123, 128 (D. Del. 2010) ("Under the attorney work-product doctrine, documents prepared by counsel … in anticipation of litigation are not discoverable absent a showing of substantial need, undue hardship, or inability to obtain their equivalent by other means."). Finjan's assertions of work product immunity are narrowly limited. For example, Finjan redacted only 13 of 118 pages of a Board presentation.

Finjan did not waive work product immunity when it shared the Disputed Documents with Cisco's Board observer pursuant to a confidentiality obligation a decade before the parties became adversaries. D.I. 135-5, Ex. E (IRA), § 2.7. Immunity is maintained when a document is prepared "in anticipation of litigation" and is only disclosed to third-parties bound to maintain its confidence, as was the case here. *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 478 (D. Del. 2012) ("To waive the protection of the work product doctrine, the disclosure must enable an adversary to gain access to the information."); *FastVDO LLC v. AT&T Mobility LLC*, C.A. No. 16-385-H (WVG), 2016 WL 6138036, at *3 (S.D. Cal. Oct. 21, 2016); (use of NDA shows that disclosure "did not increase the probability that a future adversarial party would discover the documents."); *Mondis Tech., Ltd. v. LG Elecs., Inc.,* No. 2:07-cv-565-TJW-CE, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011) (documents prepared for future litigation are protected work product when only disclosed to third parties under an NDA).

That Cisco and Finjan subsequently became adversaries in litigation years later, does not change the dispositive fact that, when Cisco obtained the Disputed Documents in 2005-2008, Cisco and Finjan enjoyed a collaborative relationship and there was no indication they would become adversaries. This is supported by Mr. Samet's claims that he initially had an open invitation to Finjan's board meetings, indicating the alignment of Cisco's and Finjan's interests to achieve commercial and legal success concerning Finjan's potential patent litigation. D.I.

---

[1] Finjan did not locate these documents, which are 12 to 15 years old, in its files, and only had them when Cisco produced them. Having obtained the documents through that action, Finjan duly identified them to Rapid7 in its privilege log in this case.

135-2, Ex. B at 62:15-16; Ex. 4, *Securitypoint Holdings, Inc. v. U.S.*, No. 11-268C, Slip. Op. at 4 (Ct. Cl. Apr. 16, 2019) (finding no waiver when plaintiff shared privileged documents with equity investor in company due to "common legal interest in the validity of the patent-in-suit").

Rapid7 attempts to muddy the waters by implying that Finjan and Cisco were adverse when they exchanged the Disputed Documents, and that Mr. Samet stopped regularly attending board meetings after Finjan's IP-litigation activities intensified. However, the testimony that Rapid7 cites refers to the *2008 to 2010* timeframe, which is after Finjan provided the Disputed Documents to Cisco. D.I. 135-2, Ex. B at 63:3-64:14; Ex. 3, Chinn Tr. at 219:1-220:16; Ex. 1. And Finjan's suit against Cisco did not come until years later. Because Finjan and Cisco were not adverse during the relevant timeframe, disclosure of the Disputed Documents did not waive immunity. *Mondis*, 2011 WL 1714304 at *3. Rapid7's reliance on *Micron Tech.* and other authorities is misplaced because those cases involved voluntary disclosure *to an entity adverse at the time of disclosure*. Here, Finjan and Cisco had *a close, confidential relationship at the time of disclosure*. Thus, the Court should deny Rapid7's request to obtain Finjan's work product.

### B. The Disputed Documents are Attorney-Client Privileged

The Disputed Documents are also privileged because they contain legal advice communicated by Finjan's outside counsel to its client. D.I. 135-1, Ex. A at 2-16. As such, they are immune from discovery. *WebXchange*, 264 F.R.D. at 126 ("The attorney-client privilege protects from compelled disclosure any communication that satisfies the following elements: it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.") (internal citations omitted).

Finjan did not waive attorney-client privilege in the Disputed Documents. Attorney-client privilege attaches to both individuals and corporations. *Upjohn Co. v. U.S.,* 449 U.S. 383, 390 (1981). Only Finjan, as the holder of the attorney-client privilege may waive it. *In re Hechinger Investment Co. of Delaware*, 285 B.R. 601, 610 (D. Del. 2002). Here, Finjan as the holder of the privilege has vigilantly and correctly asserted its protection.

Providing Disputed Documents to Cisco's Board observer under an NDA did not waive privilege because of the common interest between Finjan and Cisco at that time. *Mondis,* 2011 WL 1714304, at *3 (finding privilege covers documents prepared for investors that covered potential litigation); *MobileMedia Ideas LLC v. Apple, Inc.,* 890 F. Supp. 2d 508, 518 (D. Del. 2012) (finding a common interest among investors where they each received "a percentage of the recovery from any successful enforcement" of patents); *Devon It, Inc. v. IBM Corp.,* 10-2899, 2012 WL 4748160, at *1 (E.D. Pa. Sept. 27, 2012) (finding plaintiff and its investor have a common interest in the successful outcome of the litigation). Finjan and Cisco's falling out a decade later does not change Cisco's obligation to maintain the confidentiality of the Disputed Documents under the IRA and the parties' NDAs. *Montgomery v. eTreppid Techs., LLC*, 548 F. Supp. 2d 1175, 1187 (D. Nev. 2008) (finding attorney-client privilege is the corporation's and a now adverse former director still has a duty to keep information confidential).

Rapid7 entirely misses the point in arguing that Finjan ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The salient point is that Cisco had a common legal interest with Finjan in the validity and enforcement of the company's infringed patents, and Cisco and its representative were obligated to preserve as confidential all information that Finjan provided. Thus, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ there was no waiver, and attorney-client privilege prevents Rapid7 from obtaining the Disputed Documents. *Devon It,* 2012 WL 4748160, at *1.



Respectfully,

*/s/ Philip A. Rovner*

Philip A. Rovner (#3215)

cc: All Counsel of Record – by CM/ECF
6729060