**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| FINJAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1519-MN |
| | ) | |
| RAPID7, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND SPECIAL MASTER ORDER #2**

Defendants Rapid7, Inc. and Rapid7 LLC (Rapid7) move to compel Plaintiff Finjan, Inc. (Finjan) to produce documents "regarding the relationship and patent acquisition and development agreement between Finjan's wholly owned subsidiary, Finjan Blue, Inc., and IBM ('IBM Documents')." D.I. 170 at 1. Using Judge Noreika's discovery dispute procedure, the parties filed letter briefing on this motion. D.I. 160 and 163. On July 8, 2020, the Court appointed this Special Master. D.I. 167; *see also* D.I. 164. The Special Master requested a letter brief from non-party IBM because IBM had asserted confidentiality objections to Finjan's production of the IBM Documents. D.I. 169. The Special Master also allowed Rapid7 to file a two-page reply. After receiving those letter briefs, the Special Master held a hearing on July 27, 2020 via WebEx videoconference, with a court reporter present.

For the reasons explained below, the Special Master grants Rapid7's motion to compel production of the IBM Documents from Finjan.

**BACKGROUND**

In August 2017, Finjan's subsidiary, Finjan Blue, Inc., announced a patent acquisition and development agreement with IBM. D.I. 161 at Ex. B. Finjan has introduced its relationship with

IBM and the Finjan Blue-IBM agreement at trials in prior lawsuits.[1]   Transcript at 20-21. According to Finjan, the relationship typically comes up at trial when Finjan lists licensees to Finjan's patents.[2]  *Id.*

Finjan produced to Rapid7 the final written agreement between Finjan Blue and IBM. But Rapid7 wanted more information about the agreement and the Finjan-IBM relationship to rebut any representations Finjan might make at trial about its relationship with IBM— representations that Finjan has made in past trials and apparently intends to make here.  Indeed, Finjan confirmed at the hearing that it will not agree to refrain from mentioning IBM at trial. Transcript at 21.

To get the documents it wanted, Rapid7 issued ESI requests to Finjan in January 2020. D.I. 160 at Ex. J.  Rapid7 and Finjan agreed on search terms that aim to return emails related to the Finjan-IBM relationship and the Finjan Blue-IBM agreement.  Transcript at 6-7.  Finjan ran these terms and has assembled the resulting documents for production.  The parties refer to these as the "IBM Documents."  Finjan does not object to producing the IBM Documents based on relevancy, burden, or any other basis.  D.I. 163 at 1.  In fact, Finjan at one point stated that it "intends to produce the IBM Documents, and has started the process to do so."  D.I. 160 at Ex. K.

Before producing the IBM Documents, however, Finjan needed IBM's permission or a court order.  D.I. 163 at 1.  Finjan sent a copy of all the IBM Documents to IBM in April 2020 and requested IBM's consent to produce them.  Transcript at 22-23.  IBM admits that it has had a copy of the IBM Documents since April, but IBM has not reviewed the documents in detail.  Transcript

---

[1] Neither side was able to point the Special Master to the earlier trials where Finjan mentioned its relationship with IBM.  Presumably, these earlier trials involved allegations of patent infringement.
[2] While none of the patents asserted in this case were acquired by Finjan from IBM, IBM has a license from Finjan for some of the asserted patents.  Transcript at 15-16.  Neither side noted which of the asserted patents have been licensed to IBM.

at 24-25.  Based on its limited review, IBM believes that the requested documents "reflect IBM's negotiations with Finjan leading up to execution of the Patent Assignment and Support Agreement…and, as such, contain IBM information that is commercially sensitive and confidential to IBM."  IBM's July 20, 2020 Letter Brief at 2.  According to IBM, this information is "very sensitive to IBM's business of selling and assigning its patents and disclosure of this type of information to other entities risks irreparable harm to non-party IBM's ability to negotiate similar patent assignment transactions with others on fair and un-tainted terms."  *Id*.  IBM also argues that the discovery Rapid7 requested from Finjan is overbroad.  IBM seeks to limit the production to documents dated after the execution of the Finjan Blue-IBM agreement.  *Id*. at 3.  Further, IBM asserts that the IBM documents are "ancillary and not important to resolving the issues in this case."  *Id*.

Based on its objections, IBM instructed Finjan not to produce the IBM Documents.  Transcript at 27-28.  Finjan's only reason for not producing the IBM Documents is IBM's instruction not to produce them.  Transcript at 18.

In two prior patent litigations, other defendants have requested the same or similar documents as Rapid7 seeks here.  In *Finjan, Inc. v. Cisco Systems, Inc.*, C.A. No. 5:17-cv-72-BLF-SVK (N.D. Cal.), the court ordered Finjan to either produce the IBM Documents or refrain from referencing IBM at trial.  D.I. 161 at Ex. D.  Finjan elected to refrain from referencing IBM.  D.I. 161 at Ex. E.  In *Finjan v. SonicWall, Inc.*, C.A. No. 5:17-cv-4467-BLF-VDK (N.D. Cal.), the parties, along with IBM, negotiated a compromise whereby IBM would allow a focused deposition and declaration from IBM in lieu of Finjan's production of the IBM documents.  IBM and Rapid7

agreed to the same compromise here, but Finjan objected because the fact discovery deadline had expired on March 13, 2020 (D.I. 112).[3]

## DISCUSSION

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Relevance is liberally construed to "encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

IBM asserts that the IBM Documents are not relevant. As an initial matter, IBM's standing to make this objection is unclear. IBM has not cited any authority for the proposition that IBM has such standing, particularly where, as here, the parties to the action do not dispute that the requests seek relevant information and are not overbroad.

---

[3] At the hearing and in its letter brief, IBM stated its willingness to proceed with this negotiated compromise. Rapid7 also indicated it was willing to proceed with this compromise. Rapid7 filed a Proposed Order (D.I. 170-1), however, that did not mention this form of relief and requested only production of the IBM Documents or an order that Finjan was forbidden from referencing its relationship with IBM at trial. Further, Rapid7 has not served a deposition subpoena on IBM. Therefore, the Special Master is not in a position to order the parties to proceed with a deposition of IBM at this time.

But even if IBM had standing, the arguments made in IBM's letter brief would not carry the day. Finjan has agreed not to assert the patents-in-suit against IBM.[4] D.I. 160 at Ex. C, Section 3.0. Finjan plans to introduce this fact and its relationship with IBM at trial in this matter. The Court here could allow Finjan to introduce this relationship at trial in this case.[5] At least two courts let it in at past trials involving Finjan. Under these specific facts, the IBM documents, whether or not they are "ancillary," are within the liberal scope of discovery allowed by Rule 26.

As to commercially sensitive information allegedly in the IBM Documents, the case Protective Order fully addresses IBM's concerns. That Protective Order provides for the production of documents on an outside counsel eyes' only basis. D.I. 33 at ¶ 4. Rapid7 has agreed that Finjan can mark the IBM Documents "Confidential—Outside Counsel Only." Rapid7's July 23, 2020 Letter Brief at 2. When asked at the hearing, IBM's counsel essentially agreed that producing the IBM Documents "Confidential—Outside Counsel Only" would address IBM's concerns. Transcript at 32-33. The fact that Rapid7 does not appear to be a direct competitor of IBM further reduces any potential for harm to IBM.

IBM also argues that production of the IBM Documents in this case could result in production of these same documents in future litigations, which would let "the horse out of the barn so to speak." Transcript at 33. But no one knows what future actions may be brought, whether Finjan will inject its relationship with IBM into those actions, or whether defendants in those actions will seek the IBM Documents produced here. So IBM's concern seems somewhat

---

[4] During the hearing, Rapid7's counsel referred to this arrangement as a "cross license." Transcript at 15. Rapid7's letter brief labelled it a "covenant." D.I. 160 at 1.

[5] This is a decision on a motion to compel and not a decision on a motion in limine or an objection made at trial. The Special Master takes no position on whether statements made by Finjan about its relationship with IBM would be admissible or proper at trial.

speculative.  And, even if IBM's concern comes to pass, Finjan has committed to seeking IBM's permission before producing the IBM Documents in any future litigation.  Transcript at 34.

In any event, IBM should have foreseen when it entered into a patent acquisition and license agreement with Finjan that documents concerning that agreement and IBM's relationship with Finjan could be requested and produced in future patent litigations, especially a litigation such as this one involving the very patents that are a subject of the agreement.  That is, IBM never should have expected this horse to stay in the barn.

Finally, complaints by either Finjan or IBM about the timing of Rapid7's requests are not compelling given the progress of this case to date.  Rapid7 served its ESI requests on January 23, 2020, before the fact discovery deadline.  Finjan initially agreed to produce the IBM Documents. Finjan does not object to producing the IBM Documents, even now.  Finjan produced other emails and documents in response to Rapid7's ESI requests on May 13, 2020, well after the March 13, 2020 fact discovery deadline.  Transcript at 23.  Under these facts, Rapid7's requests were timely.

Consistent with the Memorandum Opinion above, the Special Master orders as follows:

(1)     Rapid7's motion to compel is GRANTED insofar as it requests that Finjan produce the IBM Documents, and is otherwise DENIED WITHOUT PREJUDICE;

(2)     Finjan shall produce the IBM Documents to Rapid7 on or before 6 p.m. Eastern on August 13, 2020; and

(3)     To the extent Finjan withholds any of the IBM Documents on the basis of the attorney-client privilege, attorney work product, or any other privilege or protection, Finjan shall produce a log of the withheld documents, consistent with the requirements of Rule 26, on or before August 18, 2020.

IT IS SO ORDERED.


Dated: August 6, 2020

_____
Special Master Chad S.C. Stover