IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINJAN, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 18-1519-MN |
| ) | |
| RAPID7, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

On September 17, 2020, Special Master Order #4 (D.I. 189) granted-in-part and denied-in-part Defendants Rapid7, Inc. and Rapid7 LLC's (collectively, Rapid7) Motion to Strike Portions of the Expert Report of Dr. Mitzenmacher (D.I. 183). Order #4 was issued on an expedited basis because Dr. Mitzenmacher's deposition was scheduled for September 21, 2020. This memorandum opinion explains the reasoning for the rulings in Order #4.

**BACKGROUND**

At the scheduling conference in this case, Plaintiff Finjan, Inc. (Finjan) requested, and the Court ordered, that Rapid7 was to make its source code available for inspection at the time of core technical document production, which is earlier than usual. In doing so, the Court warned Finjan that it was "going to expect that the infringement contentions be pretty full and pretty informative" and "[if] they're giving you the source code on these products, I expect you [Finjan] to incorporate that and explain how the products infringe." 1/30/19 Teleconference Transcript at 9:21-24; 9:25-10:2.

After producing its source code for inspection and receiving Finjan's preliminary infringement contentions, Rapid7 believed the contentions were lacking and moved to compel

more detailed contentions. At a December 13, 2019 hearing on Rapid7's motion to compel, Finjan's counsel distinguished its contentions from the greater level of detail offered in an expert report. 12/13/2019 Hearing Transcript at 11. Judge Noreika then ruled as follows:

> It's up to Finjan, you can by January 10th supplement again to address some of these concerns. It's up to you. But if you don't, you're not going to be able to raise new issues. Like when you said this is not an expert report, you're not going to suddenly be able to get into a lot more detail in actually fleshing out your contentions in an expert report if you haven't fairly disclosed them here. If you think this is sufficient to give notice of what your contentions are, I'm not going to make you supplement because I'm not sure exactly what you need, but if you don't supplement and get more specific with what you're claiming, what aspects of this meet the claim elements, you're not going to be able to do [that] for the first time and surprise them in the expert reports. I'm not saying that's what you're intending to do, it just caught my attention when you said this is not an expert report. The expert reports may want to flesh out a little bit more, but they shouldn't for the first time be giving what specific aspects of this [] meet the element.

*Id*. at 12.

Finjan proceeded to supplement its infringement contentions and then served Final Infringement Contentions (FICs) on February 26, 2020. *See* Rapid7's 9/3/2020 Letter Brief at Ex. D (excerpts from the FICs). On June 17, 2020, almost four months later, Finjan served the opening expert report of Dr. Mitzenmacher regarding infringement. *See id*. at Ex. C (excerpts from Dr. Mitzenmacher's report).

Rapid7 moves to strike allegedly new infringement theories disclosed for the first time in Dr. Mitzenmacher's report. These new infringement theories fall into two categories: (1) a literal infringement theory that a "Universal Translator" capability meets the requirement of "an input modifier" in claim 41 of the '289 patent for the InsightAppSec and AppSpider products; and (2) doctrine of equivalents (DOE) infringement theories on several elements of claims in the '154, '289, and '408 patents.

**Finjan's Allegedly New Universal Translator Literal Infringement Theory**

As to the allegedly new Universal Translator capability theory, Rapid7 argues that Finjan's FICs do not reference the Universal Translator or its functionality. Rapid7 argues that while Finjan's FICs refer to a "scan engine," this disclosure did not put Rapid7 on notice that the more specific Universal Translator capability allegedly meets element 41(c). Rapid7 also points out that Finjan was aware of the Universal Translator capability well before its FICs, and Finjan even pointed to the Universal Translator capability in its FICs for another patent. *See* Rapid7's Opening Letter at Ex. D, Appendix F-5 at 7.

Finjan's letter brief admits that "the level of detail is greater in Dr. Mitzenmacher's report than in the FICs" and it did not use the term "Universal Translator" in the FICs with regard to element 41(c). 9/10/2020 Letter Brief at 2. But Finjan argues that it disclosed the same functionality as the Universal Translator when it disclosed "scan engines" and described their function. Finjan also argues that Rapid7 belatedly produced documents regarding the Universal Translator, which Dr. Mitzenmacher relies on in his report.

**Finjan's Allegedly New DOE Theories**

Rapid7 argues that Dr. Mitzenmacher disclosed new DOE theories for claim element 1(b) of the '154 patent, element 1(d) of the '154 patent, elements 41(c) and 41(e) of the '289 patent, and element 1(b) of the '408 patent. Finjan's FICs for element 1(d) of the '154 patent, elements 41(c) and 41(e) of the '289 patent, and element 1(b) of the '408 patent do not identify a DOE theory of infringement. For element 1(b) of the '154 patent, however, the FICs disclose a DOE theory. Rapid7 argues that Finjan's DOE theory in its FICs relates to only one part of element 1(b) ("Only if…such invocation is safe"), while Dr. Mitzenmacher's report sets forth a

DOE theory on another part of element 1(b) ("processing content…including a call to a first function").

Finjan argues that Dr. Mitzenmacher's DOE opinions are not new but rather "modest elucidations" of the functionalities accused in the FICs. Finjan also argues that each challenged DOE opinion corresponds to an equivalent literal infringement theory in the FICs. That is, according to Finjan, its literal infringement theories in the FICs put Rapid7 on notice of the accused functionalities and the DOE theories in the expert report should have come as no surprise given the functionalities accused in the FICs.

## LEGAL STANDARDS

Fed. R. Civ. P. 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Infringement contentions are considered to be "initial disclosures" under Rule 26(a). *Intellectual Ventures I LLC v. AT&T Mobility LLC,* 2017 WL 658469, at *1 (D. Del. Feb. 17, 2017).

To determine whether a failure to disclose is harmless, courts in the Third Circuit consider the "*Pennypack*" factors, which include: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld. *See Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 904-05 (3d Cir. 1977)). The

4

determination of whether to exclude evidence is within the discretion of the court.  *See In re Paoli*, 35 F.3d 717, 749 (3d Cir. 1994).

## DISCUSSION

**I.      Rapid7's motion to strike the portions of paragraphs 552-554 of Dr. Mitzenmacher's report relating to the "Universal Translator" is GRANTED.**

In its FICs, Finjan accused the broad functionality of the "scan engine" of meeting the claim element "an input modifier" in claim 41 of the '289 patent for the InsightAppSec and AppSpider products.  The parties agree that the broad functionality accused in the FICs includes the Universal Translator capability.  But Finjan failed to accuse the Universal Translator capability until its opening expert report.  Finjan provides no reason why it failed to accuse the Universal Translator capability in its FICs.  In fact, Finjan's counsel admitted "if I could go back in time to moot this issue, would I have pointed that [Universal Translator] out there, of course." Tr. 46:1-3.

If those were the only relevant facts, this would be a closer call.  Here, however, Finjan received at least two warnings from the Court to provide specificity in its infringement contentions.  The second warning addressed the situation here:  "if you don't supplement and get more specific with what you're claiming, what aspects of this meet the claim elements, you're not going to be able to do [that] for the first time and surprise them in the expert reports." 12/13/2019 Hearing Transcript at 12.  Because Finjan's new reliance on the Universal Translator capability violates the Court's warning, the new disclosure must be stricken.

Finjan's letter brief cites several decisions where an expert was allowed to provide more specific infringement opinions based on broad theories disclosed in infringement contentions.  This case is different from those decisions in two important respects.  First, none of these decisions involved prior, direct warnings from the Court like the ones made here.  Second, Finjan

5

knew enough about the Universal Translator capability to specifically accuse it as part of its FICs for another patent in the case. This shows that Finjan knew about the Universal Translator capability at the time of its FICs and chose not to include it as meeting the "an input modifier" element.[1] Based on the specific facts at issue here, Finjan's new reliance on the Universal Translator capability is untimely.

The five *Pennypack* factors do not excuse Finjan's untimely disclosure.

(1)     *Surprise or Prejudice*. Rapid7 is prejudiced by the new disclosure of the Universal Translator capability at this advanced stage of the case. Fact discovery has been closed for over three months. While this new disclosure affects only one of many claim elements, every claim element is important because every element must be met for a product to infringe. Rapid7 struggled to define its prejudice with precision, noting that its claim construction positions might have been different, it might have developed the factual record in different ways, and its expert reports might have been different. While a more precise prejudice argument would have been more compelling, Rapid7 is correct that there is no way to know whether its expert's opinions are the same as they would have been if Finjan had timely accused the Universal Translator capability. *See Galderma Labs, L.P. v. Amneal Pharms., LLC*, C.A. No. 16-207-LPS, 2018 WL 508876, *2 (D. Del. Jan. 22, 2018). Finjan also notes that Rapid7's expert was able to respond to the new disclosure within the existing expert disclosure guidelines. While true, it would be unjust to penalize Rapid7 for doing its best under difficult circumstances.

---

[1] Finjan attempts to blame the absence of the Universal Translator capability from the FICs on Rapid7's late production of documents about the Universal Translator. 9/10/2020 Letter Brief at 3. This argument has no force because Finjan knew enough about the Universal Translator capability to accuse it of meeting another claim element for another patent in its FICs. In fact, the graphic Finjan included regarding the Universal Translator capability for this other patent is essentially the same as the graphic Dr. Mitzenmacher included in the challenged paragraphs of his report. *Compare* Rapid7's Opening Letter at Ex. D, Appendix F-5 at 7 *with* Ex. C at ¶ 552.

*Id.* (noting that a party in this position is faced with "two bad options: either scramble to have an expert respond…or offer no response and risk not preserving an opinion for trial if the [] Motion to Strike [is] denied.").

(2) and (3) *The possibility of curing the prejudice and potential disruption of an orderly and efficient trial.* While the prejudice to Rapid7 is partially curable through responsive expert reports and expert depositions, at least some of the prejudice remains because fact discovery is closed and there is no time to reopen fact discovery under the schedule. Thus, this factor favors striking the new disclosure.

(4) *Bad faith or willfulness.* The Special Master does not believe that Finjan acted in bad faith. The Court's repeated warnings about providing complete contentions and Finjan's repeated supplementation of its contentions, however, cannot be ignored. Nor can it be ignored that Finjan has had the relevant source code since May 2019. Thus, this factor slightly favors striking the new disclosure.

(5) *Importance of the information withheld.* Striking the new disclosures will not leave Finjan without an infringement case. At the hearing, Finjan admitted that "[t]his is a few pages of the whole treatise on infringement." Hearing Tr. 62:7-8. This is consistent with Finjan's letter brief, which admitted that "the challenged opinions are of modest importance." 9/10/2020 Letter Brief at 5. Thus, this factor favors striking the new disclosure.

Taken as a whole, the *Pennypack* factors show that Finjan's untimely disclosure was not harmless. Further, in "sophisticated, complex litigation involving parties represented by competent counsel" (a hurdle this case easily clears), courts have "been less indulgent" in applying the *Pennypack* factors and "more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *Bridgestone Sports Co. v. Acushnet Co.*,

2007 WL 521894, at *4 (D. Del. Feb. 15, 2007). Thus, even without a strict showing that each *Pennypack* factor is satisfied, the result here would be the same.

II. **Rapid7's motion to strike paragraphs 434-438, 449-453, 464-468, 477, 483, 546-550, 564-568, 581-585, 645-649, 658-662, 670-674, 749-753, and 766-770 of Dr. Mitzenmacher's report, which contain doctrine of equivalents opinions as to element 1(d) of the '154 patent, elements 41(c) and 41(e) of the '289 patent, and element 1(b) of the '408 patent, is GRANTED.**

Finjan's FICs did not disclose a DOE theory of infringement for element 1(d) of the '154 patent, elements 41(c) and 41(e) of the '289 patent, or element 1(b) of the '408 patent. Thus, Dr. Mitzenmacher's DOE opinions on these claim elements were new. Finjan provides no reason why it did not disclose these new DOE theories earlier in the case. Hearing Tr. 61:18-62:1. Disclosing a new theory of infringement in the opening expert report violates the Court's earlier warnings discussed above. Therefore, the Special Master grants Rapid7's motion to strike Dr. Mitzenmacher's new DOE theories.

Finjan argues that its new DOE theories are supported by its previously disclosed literal infringement theories accusing the same functionality. But DOE theories of infringement are separate and distinct from theories of literal infringement. *See TQ Delta, LLC v. Adtran, Inc.*, 2020 U.S. Dist. LEXIS 136536, at *7-8 (D. Del. July 31, 2020) ("Plaintiff just cannot raise the entirely new argument that the products infringe under a DOE theory.").

Finjan extensively cites to *HSM Portfolio LLC v. Elpida Memory, Inc.*, 2016 U.S. Dist. LEXIS 16786, at *13-15 (D. Del. Feb. 11, 2016). In *HSM*, the earlier infringement contentions accused a certain component "or its equivalents." *HSM*, 2016 U.S. Dist. LEXIS 16786, at *13. The court's ruling in *HSM* focused on the "or its equivalents" language. Here, however, the contentions fail to mention "equivalents." Thus, *HSM* is distinguishable. Judge Noreika's prior

8

warnings to provide complete contentions further distinguishes the present situation from the facts of *HSM*.

The *Pennypack* factors again show Finjan's failure to disclose was not harmless. The discussion of the *Pennypack* factors above in Section I applies with equal force here. In addition, re-opening discovery to cure the prejudice from new DOE theories would disrupt an already tight case schedule. *See TQ Delta,* 2020 U.S. Dist. LEXIS 136536, at *7 ("re-opening discovery to give Defendant an opportunity to cure the prejudice [from new DOE theory] would only disrupt the schedule further"). As to the importance of the DOE theories, as in *TQ Delta*, this factor favors striking the new DOE theories because Finjan will still be able to assert its literal infringement theories, which it claims are a mirror image of the stricken DOE theories. *See id.* at *7-8 (Plaintiff can still rely on that opening report at trial. Plaintiff just cannot raise the entirely new argument that the products infringe under a DOE theory.").

**III.** **Rapid7's motion to strike paragraphs 324-328, 352-356, 378-382, 410-414, and 424 of Dr. Mitzenmacher's report, which contain doctrine of equivalents opinions as to element 1(b) of the '154 patent, is DENIED.**

For element 1(b) of the '154 patent, Finjan's FICs disclosed a DOE theory of infringement. *See* Rapid7's 9/3/2020 Letter Brief at Ex. D, Appendix C. But Rapid7 argues that the DOE theories in Finjan's FICs are for only a subpart of element 1(b) while Dr. Mitzenmacher put forth a different DOE theory as to a different subpart of element 1(b). Rapid7 is correct that the DOE theories for element 1(b) in Dr. Mitzenmacher's report are not identical to the DOE theories in the FICs. The parties dispute the magnitude and importance of the differences.

After a thorough review of the parties' arguments, the differences between the FICs and the expert report on this element appear relatively insignificant. Rapid7 certainly cannot argue that a DOE theory on this element in Dr. Mitzenmacher's report was a surprise. Also, any

9

prejudice to Rapid7 is slight. Rapid7 does not point to any discovery it would have taken had it received the specific formulation of Finjan's DOE position in Dr. Mitzenmacher's report during fact discovery. Rapid7 argues that it might have sought to construe an additional claim element. But Rapid7 has not asked to reopen claim construction. Rapid7 also argues it might have asserted an ensnarement defense. Rapid7 did not assert an ensnarement defense as to this element during fact discovery, however, despite knowing that Finjan was asserting a DOE theory on this element. And since receiving Dr. Mitzenmacher's report, Rapid7 has not asked to assert an ensnarement defense. There is therefore no reason to believe that Rapid7 would have asserted ensnarement as to this element had it known of Dr. Mitzenmacher's specific formulation of Finjan's DOE theory earlier.

The facts here, as opposed to the facts in Section II above, line up more closely with *HSM*. As in *HSM*, "equivalents" was mentioned in the earlier infringement contention, and the opposing expert fully responded to the DOE theory in a rebuttal report.

For these reasons, the Special Master denies Rapid7's motion to strike the paragraphs of Dr. Mitzenmacher's report with a DOE theory of infringement on element 1(b) of the '154 patent.

## IV. The Result Would Be the Same under a Good Cause Standard

This motion could be viewed through the lens of a scheduling order violation rather than as a motion to strike. *See, e.g., British Telecommunications PLC v. IAC/INTERACTIVECORP*, C.A. No. 18-366-WCB, 2020 WL 3047989 (D. Del. June 8, 2020). Rapid7 at one point suggests this. 9/3/2020 Letter Brief at 2. Viewed through this lens, Finjan must show good cause. *See* 12/13/2019 Hearing Transcript at 16 ("And then only if you show good cause after that for learning something new can you supplement again."). The key factor in demonstrating good

cause is diligence. *British Telecommunications*, 2020 WL 3047989 at *2 ("In determining whether a party has demonstrated good cause to amend its contentions, the key factor that courts have considered is whether that party has shown diligence both in discovering that an amendment was necessary and in moving to amend after that discovery."). "If the moving party can establish diligence, other considerations pertinent to the good cause inquiry come into play, including the importance of the new information, the difficulty of locating the new information, any gamesmanship that is evident from the untimely disclosure, and the potential prejudice to the opposing party that would result from permitting the belated amendment." *Id*.

Applying the good cause standard would not change the result here. Because Finjan knew about the Universal Translator capability well before its FICs—and even cited the Universal Translator capability in a chart for a different patent in its FICs—Finjan could not show diligence and thus could not meet the good cause standard. As to the previously undisclosed DOE theories in Dr. Mitzenmacher's report, the record does not show that Finjan acted diligently to disclose these theories or that they are based on recently discovered information. Finjan has had the relevant source code since May 2019. For element 1(b) of the '154 patent, where Finjan previously disclosed a DOE theory in its FICs, Finjan can establish diligence more easily because it is merely supplementing an existing DOE theory rather than asserting a DOE theory on an element for the first time. Other considerations such as lack of gamesmanship and lack of prejudice also support finding good cause for the supplementation as to element 1(b).

## CONCLUSION

For these reasons, Rapid7's motion to strike (D.I. 183) is GRANTED-IN-PART and DENIED-IN-PART.

Dated: September 28, 2020

                                                       Special Master Chad S.C. Stover