# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINJAN LLC, a Delaware Limited Liability Company, <br><br>    Plaintiff, <br><br>  v. <br><br>RAPID7, INC., a Delaware Corporation and RAPID7 LLC, a Delaware Limited Liability Company, <br><br>    Defendants. | C.A. No. 1:18-cv-01519-MN <br><br> Jury Trial Demanded <br><br> **REDACTED VERSION** <br> **(Filed on October 9, 2020)** |

## LETTER TO THE HONORABLE MARYELLEN NOREIKA
## REGARDING MOTION FOR PARTIAL SUMMARY JUDGMENT

Sealed Version
Dated: October 2, 2020

**\*OF COUNSEL:**

L. Norwood Jameson
Matthew C. Gaudet
David C. Dotson
John R. Gibson
Robin McGrath
Jennifer H. Forte
**DUANE MORRIS LLP**
1075 Peachtree Street NE, Suite 2000
Atlanta, GA 30309
Tel.: (404) 253-6900
wjameson@duanemorris.com
mcgaudet@duanemorris.com
dcdotson@duanemorris.com

Jarrad M. Gunther
Joseph A. Powers
**DUANE MORRIS LLP**
30 South 17th St.
Philadelphia, PA 19103-4196
Tel.: (215) 979-1837
jmgunther@duanemorris.com
japowers@duanemorris.com

Richard L. Renck (No. 3893)
**DUANE MORRIS LLP**
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Tel.: (302) 657-4900
Fax: (302) 657-4901
RLRenck@duanemorris.com

*Counsel for Defendants*
*Rapid7, Inc. and Rapid7 LLC*

Jordana Garellek
**DUANE MORRIS LLP**
1540 Broadway
New York, NY 10036-4086
Tel.: (212) 471-1829
jgarellek@duanemorris.com

*admitted pro hac vice*



RICHARD L. RENCK
E-MAIL: RLRenck@duanemorris.com

October 2, 2020

**VIA ECF**  **REDACTED VERSION**

The Honorable Judge Maryellen Noreika
844 N. King Street, Unit 19, Room 4324
Wilmington, DE 19801-3555

   Re: *Finjan LLC v. Rapid7, Inc. and Rapid7 LLC,* Case No. 18-1519-MN (D. Del.)

Dear Judge Noreika:

  Defendants Rapid7, Inc. and Rapid7 LLC (collectively, "Rapid7") respectfully seek permission to file a motion for partial summary judgment of non-infringement regarding all but one accused product, for one asserted patent. Rapid7's products are in entirely different areas of cybersecurity than the asserted patents. Accordingly, there are fundamental and irreconcilable differences between Rapid7's products and the asserted patents.

  Finjan's patents are about determining whether a file sent to a user is malware, i.e., a file that will create or exploit a vulnerability on the user's network or applications. Thus, the emphasis is on analyzing the incoming file. Many companies offer such products (and Finjan has already sued or licensed most of them), but Rapid7 is not one of them. Rapid7 is in a completely different part of the computer security market. Rapid7's products predominantly examine the user's computer network or applications to identify "vulnerabilities," which are areas that are potentially vulnerable to attack *by* malware/malicious code, as explained by both Finjan's expert Dr. Medvidovic and Rapid7's expert Dr. Almeroth. [REDACTED]

As explained below, Finjan attempts to fit a square peg in a round hole asserting its patents (related to inspecting incoming files for malware) against Rapid7's products (which predominantly inspect a customer's network or own web application to determine if they are vulnerable to attack).

  The asserted Patents in this case are U.S. 8,677,494 ('494 Patent); 8,079,086 ('086 Patent); 8,141,154 ('154 Patent); 7,757,289 ('289 Patent); 7,975,305 ('305 Patent); 8,225,408 ('408 Patent); and 7,613,918 ('918 Patent). D.I. 1-1. The relevant accused products are InsightVM, Nexpose, InsightAppSec, AppSpider, InsightIDR, and Metasploit. For purposes of Rapid7's proposed motion, InsightVM and Nexpose (collectively "Nexpose") operate the same way, and InsightAppSec and AppSpider (collectively, "AppSpider") operate the same way (although InsightVM and InsightAppSec are not at issue for the '494 and '086 Patents). Accused functionality relevant to the various products and asserted patents is discussed below.

**'305, '408, '494, '086 Patents – Nexpose, AppSpider, and Metasploit Products**

  Each of these patents relates to detecting malware. The '305 Patent asserted claim requires receiving an "incoming Downloadable" and scanning it "to recognize potential **computer exploits**

DUANE MORRIS LLP

222 DELAWARE AVENUE, SUITE 1600 WILMINGTON, DE 19801-1659  PHONE: +1 302 657 4900 FAX: +1 302 657 4901

The Honorable Judge Maryellen Noreika
October 2, 2020
Page 2

DuaneMorris

therewithin . . . computer exploits being **portions of program code that are malicious**." D.I. 1-1, '305 Patent, cl. 25. The '408 Patent asserted claims similarly require "indicating [. . .] the presence of potential **exploits** within the incoming stream" of program code, again specifying that "exploits" are "**portions of program code that are malicious**." D.I. 1-1, '408 Patent, cl. 1, 4, 22, 29. Similarly, all asserted claims of the '494 Patent, and asserted claims 1, 4, 17, and 24 of the '086 Patent require receiving an "incoming Downloadable" and "deriving security profile data for the Downloadable, **including a list of suspicious computer operations that may be attempted** by the Downloadable." D.I. 1-1, '494 Patent, cl. 1;'086 Patent cl. 1, 4, 17, 24. Asserted claim 42 of the '086 Patent requires receiving an "incoming Downloadable" and "retrieving security profile data . . . including **a list of suspicious computer operations that may be attempted** by the Downloadable". D.I. 1-1, '086 Patent, cl. 42. The Court construed "list of suspicious operations" in the '494 and '086 Patents as "list of **computer operations** derived from a received Downloadable that are **deemed hostile or potentially hostile**." D.I. 123 at 2. The Court construed "Downloadable" as "an executable application program, which is downloaded from a source computer and run on a destination computer." *Id.* at 1.

It is undisputed that that Nexpose and AppSpider identify *vulnerabilities* within a customer's network or a customer's web applications. Ex. C, Green Tr. 58:14-17; Ex. D, Giakouminakis Tr. 55:15-23. Likewise, it is undisputed that Metasploit is a penetration testing tool that tests a customer's network or applications through the use of attack modules to verify *vulnerabilities* on the customer's network or applications. Ex. E, Cook Tr. 19:13-20:17, 24:18-25:22. The issue at summary judgment is a legal question for the Court: whether *vulnerabilities* can satisfy the asserted claims' requirements relating to identifying potentially *malicious program code* ('305 and '408 Patents) or *computer operations derived from a received Downloadable that are deemed hostile or potentially hostile* ('494 and '086 Patents).

A vulnerability is a *potential* weakness in a computer system that may be exploited *by* malicious code or hostile operations. Customers use Nexpose, AppSpider, and Metasploit to identify and validate vulnerabilities in their networks, and prioritize what vulnerabilities their IT team should remediate first. These Rapid7 products are akin to a security consultant checking a house to determine if there are unlocked doors or windows – i.e., potential vulnerabilities – that a malicious intruder might use to enter the house, and providing the homeowner with a report ranking which windows or doors are most likely to be used by an intruder. Finjan's patents, in contrast, are akin to the home owner hiring a security guard to stand in front of the house and determine whether people seeking to enter are malicious intruders, so they can be turned away. An unlocked window is not itself malicious/hostile, but rather it potentially renders the house more vulnerable to malicious/hostile activity. These are two completely different approaches to security.

There is no factual dispute that Nexpose, AppSpider and Metasploit do not detect malicious code or potentially hostile operations that an incoming executable application program can perform. For example, Rapid7's Rule 30(b)(6) designee for Nexpose confirmed that it cannot detect anything other than vulnerabilities. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). He further testified ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Finjan, not surprisingly, stopped asking these basic questions in subsequent depositions for other accused products, but the same is true for AppSpider and Metasploit. Any attempt by Finjan to manufacture a factual dispute can be fully addressed during the summary judgment briefing process.

The Honorable Judge Maryellen Noreika
October 2, 2020
Page 3



### '494 and '086 Patent – InsightIDR Product

      Finjan also alleges the InsightIDR product infringes the '494 and '086 Patents. Each asserted claim of the '494 and '086 Patents requires "receiv[ing] an incoming Downloadable" and either deriving or retrieving "security profile data for the incoming Downloadable" that includes a "list of suspicious computer operations that may be attempted by the Downloadable." '494 Patent, cl. 10; '086 Patent, cl. 1, 17, 24, 42. Unlike the above Rapid7 products, InsightIDR has the ability to identify behaviors or *activity occurring on a customer's network* that are potentially malicious. It does so by monitoring activity that takes place on a customer's network ▮▮▮▮▮▮ owever, InsightIDR does *not* monitor (or analyze, inspect, scan, etc.) any incoming application programs to determine if they perform suspicious operations. InsightIDR thus does not receive an "incoming Downloadable," and does not derive or retrieve a security profile "including a list of suspicious computer operations that *may be* attempted by the Downloadable."

      For both patents, Finjan alleges that "Insight Agents [which are a component of InsightIDR] receive Downloadables through monitoring employee and server endpoints." Ex. F, Cole Rep. ¶¶ 309, 509. Finjan's expert identifies as an "incoming Downloadable" information such as log data gathered from a customer network, or ▮▮▮▮▮▮. First, the information received by Insight Agents and evaluated by InsightIDR is not an "incoming Downloadable" (i.e., an incoming "executable application program"), and Finjan's expert does not even attempt to explain how it could be. For the only thing he identifies that could even arguably be considered a "Downloadable", he misstates the testimony of Rapid7's Rule 30(b)(6) designee, arguing that ▮▮▮▮▮▮. To the contrary, the testimony states that ▮▮▮▮▮▮ *Id.*

      Second, the information Finjan identifies as "security profile data" is not "a list of suspicious computer operations that *may be* attempted by the Downloadable". The information InsightIDR receives ▮▮▮▮▮▮ Ex. G, Adams Tr. at 97:23-98:25; Ex. F, Cole Rep. 375, 376. In other words, InsightIDR does not scan incoming Downloadables to identify suspicious operations that they *may* perform. Instead, it observes *activity* that is already happening on the customer's network and attempts to determine whether that activity is potentially malicious.

### '154 Patent – All Accused Products

      The only asserted claim of the '154 Patent requires "transmitting [an input to a call to a

---

[1] Finjan identifies, e.g., ▮▮▮▮▮▮

The Honorable Judge Maryellen Noreika
October 2, 2020
Page 4



first function within content received over a network] to the security computer for inspection, when the first function is invoked;" "receiving an indicator from the security computer whether it is safe to invoke the second function with the input;" and "invoking a second function with the input, **only if** a security computer indicates that such invocation is safe." '154 Patent, cl. 1.

For Nexpose (including in combination with Metasploit) and AppSpider, Finjan accuses a "web spidering" capability, which "crawls" (i.e., accesses) a web page and performs tests on the web page to identify vulnerabilities. Ex. H, Mitz. Rep. ¶¶ 236, 287; Ex. I, Mitz. Tr. 93:6-94:14. Finjan argues that the process of crawling the web page and testing it for vulnerabilities invokes the "functions" within that webpage, including the claimed "first function". Ex. H, Mitz. Rep. ¶¶ 239, 298-299; Ex. I, Mitz. Tr. at 30:9-23, 90:13-19, 94:17-24. Finjan argues that the process of testing the crawled webpage to identify vulnerabilities or to identify associated risk scores is indicating whether "such invocation is safe." Ex. H, Mitz. Rep. ¶¶ 429, 441; Ex. I, Mitz. Tr. 104:2-8. Finjan alleges that the "second function" that is invoked is "the *same as the first function*." Ex. H, Mitz. Rep. ¶¶ 305, 339. This theory fails as a matter of law because it cannot satisfy the requirement of "invoking a second function with the input, **only if** a security computer indicates that such invocation is safe." Because Finjan has alleged that the scanning and crawling process invokes all functions within the web page, then any alleged "second function" within that webpage was already invoked in order to determine whether any vulnerability exists as a threshold issue (i.e., before anything is sent to the alleged "security computer," and before the "security computer" can indicate whether the input is safe). Therefore, the alleged "second function" is not invoked "only if" the "security computer" indicates that such invocation is safe, as required by the claim.

For the InsightIDR product (including in combination with Nexpose), Finjan accuses functionality in which ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Finjan argues that the "input" is ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆" Ex. H, Mitz. Rep. ¶ 365. However, as Finjan acknowledges, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ This cannot satisfy the requirements of claim 1. First, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, "only if" safe as required by claim 1. Finjan does not identify any "second function" that is invoked with ▆▆▆▆ as its "input," and it is undisputed that ▆▆▆▆ is not used as an input to any "second function". Ex. I, Mitz. Tr. 135:18-136:8; Ex. H, Mitz. Rep. ¶¶ 365, 367. Second, it is undisputed that InsightIDR's Insight Agent creates ▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. The claim, however, requires that the accused

The Honorable Judge Maryellen Noreika  
October 2, 2020  
Page 5



"content processor" (i.e., Insight Agent) "process[] content *received over a network*, *the content including* a call to a first function, and the call including *an input*." '154 Patent, cl. 1.  The Insight Agent does not receive ▊▊▊ (i.e., the alleged "input") over a network; rather, the Insight Agent generates ▊▊▊.  Ex. H, Mitz. Rep. ¶ 362; Ex. I, Mitz. Tr. 133:15-25.

### '289 Patent: Nexpose, Nexpose + Metasploit, AppSpider

The asserted claims of the '289 Patent require receiving an "input".  Then, "if the input includes a call to an original function", the claims require an "input modifier" for "replacing the call to the original function with a corresponding call to a substitute function, the substitute function being operational to send the input for inspection."  D.I. 1-1, '289 Patent, cl. 41.  Finjan has not identified anything in a received "input" that is "replaced" by the accused products.  Finjan also does not identify any "substitute function" that replaces "the call to the original function" within the received "input", and that is "operational to send the input for inspection."

Finjan alleges that the claimed "input modifier" is the Nexpose Scan engine and AppSpider scan engine.  Ex. H, Mitz. Rep. ¶¶ 531, 552.  It is undisputed that the Nexpose and AppSpider scan engines can crawl web content, determine associated vulnerabilities, and send the results ▊▊▊ ▊▊▊.  The only mention in Dr. Mitzenmacher's analysis of Nexpose of any alleged "substitute function being operational to send the input for inspection" is an unsupported statement that ▊▊▊ ▊▊▊ *Id.* at ¶¶ 531, 579.  Finjan provides no evidence ▊▊▊ contain a "substitute function" or that they are "operational to send the input for inspection."  Instead, ▊▊▊ ▊▊▊  Indeed, Dr. Mitzenmacher agreed during his deposition ▊▊▊ *Id.* at 147:11-148:19.  An expert's unsupported restatement of claim language – which is all Finjan has here – is not a disputed fact.

With respect to AppSpider, Dr. Mitzenmacher simply re-states the claim language in connection with a citation to a source code file, with no explanation as to how the source code file allegedly supports his restatement of the claim language.  Ex. H, Mitz. Rep. ¶ 561.  Again, this is not sufficient to create a factual dispute, as AppSpider likewise does not modify an input or use a "substitute function" "operational to send the input for inspection."

### '918 Patent – Nexpose and AppSpider

The asserted claims of the '918 Patent require receiving "executable code ('CODE-C')", where CODE-C includes (i) wrapper executable code ('CODE-B'), (ii) potentially malicious executable code ('CODE-A'), and (iii) information about a computer account for CODE-A."  D.I. 1-1, '918 Patent, cl. 22, 28, 33.  "CODE-C" was construed as "combined code".  D.I. 123 at 2.

In his expert report, Finjan's Dr. Cole argues that CODE-C (i.e., "combined code") is satisfied if two things are somehow "associated with one another".  Ex. F, Cole Rep. ¶¶ 694, 705, 711; *see also id.* at ¶ 689 ("because the validation is *associated with* the Downloadable, together they form CODE-C").  However, during his deposition, he admitted that ▊▊▊ ▊▊▊  Ex. J, Cole Tr. 85:20-25.  Finjan does not identify any two pieces of code that were put together as "CODE-C", instead arguing that data that is "associated with" other data is good enough.  However, an "association" between two things is not combining them.

The Honorable Judge Maryellen Noreika
October 2, 2020
Page 6



                                          Very truly yours,

                                          */s/ Richard L. Renck*
                                          Richard L. Renck (#3893)

                                          *Counsel for Rapid7, Inc. and Rapid7 LLC*

RLR/chp
Attachments